**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 1, 2019**

# In the Court of Appeals of Georgia

A19A0344. ROBARDS v. THE STATE.

REESE, Judge.

A jury found Jamie Robards guilty of computer theft.[1] He appeals from the trial court's denial of his motion for new trial, arguing that he received ineffective assistance of counsel and that the trial court erred in instructing the jury. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence showed the following facts. Ideal Development Concepts ("IDC") was a direct repair contractor that cleaned up and restored or renovated buildings that had sustained fire or water damage. The Appellant worked as an operations manager for IDC from

---

[1] OCGA § 16-9-93 (a) (1).

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

September 2013 until IDC's owner, Frank Domonousky, terminated the Appellant's employment in early March 2014. Shortly thereafter, the Appellant contacted at least three of his former co-workers, who were still employed by IDC, and asked each of them to help him get a copy of an estimate for a specific home repair and reconstruction project he had been working on for IDC ("the Project"). The Project was estimated to be worth about $300,000, and the Project estimate was stored on IDC's computers in the company's Gwinnett County offices.[3]

Although two of the men contacted by the Appellant refused to assist him,[4] the other, Jay Borman,[5] agreed to help the Appellant get into IDC's offices. According to Borman, the Appellant told him that he needed the Project estimate because the owners of the property where the Project was located wanted him (the Appellant) to do the renovation, instead of IDC. So, just before midnight on March 13, 2014,

---

[3] The evidence showed that the computers and servers, and the information contained thereon (including the Project estimate), belonged solely to IDC, and IDC owned the license to utilize the cost estimation software on its computers.

[4] According to one of the men, the Appellant had told him that the "favor[ ]" he was requesting would "be a little dangerous."

[5] Borman and the Appellant were jointly charged for the crimes at issue, but, before trial, Borman agreed to plead guilty and testify truthfully at the Appellant's trial in exchange for a favorable sentence recommendation from the State.

Borman and the Appellant drove separately to the IDC building, and Borman used his access card so they could enter the building. Borman saw the Appellant go into the office of IDC employee Chris Sechrest, access Sechrest's laptop computer, and insert a thumb drive into the computer. A video recording from IDC's surveillance camera on the front of the building showed two vehicles arrive and park in IDC's lot; the vehicles matched Borman's descriptions of the vehicles he and the Appellant were driving that night. The surveillance video also showed that, about two minutes after the men parked their vehicles, the light in Sechrest's office was turned on. According to Borman, he and the Appellant were in the IDC building for 20 to 30 minutes, and the surveillance video corroborated this, showing both vehicles leaving the parking lot about 30 minutes after they had arrived.

Later the same morning, March 14, 2014, Sechrest arrived at his IDC office, opened his laptop, and saw the log-in page for the company's cost estimation program on his screen, with the Appellant's log-in password typed in. Sechrest obtained data transfer logs from his laptop showing that someone had used the computer to transfer two files to an external drive at 12:02 a.m. and 12:20 a.m. that morning; both files contained detailed renovation estimates related to the Project.

Sechrest told IDC's owner, Domonousky, about the file transfer, and Domonousky remembered that, at around midnight, he had been notified that someone had triggered the IDC building's security alarm. However, whoever had done so had quickly turned it off, so Domonousky had just assumed that an employee had been dealing with an emergency call and had accidentally triggered the alarm. Domonousky looked at the surveillance video recordings for the time period of several minutes before and after the alarm had been activated, and he saw a white van and a black sedan arrive and park next to one another at the far end of IDC's parking lot (where there was no surveillance camera), then leave several minutes later. Although the recordings did not show who was driving the vehicles, Domonousky knew that, at the time, Borman drove a white van and the Appellant drove a black Impala sedan. Domonousky also determined that Borman's security code had been used to access the building. Based on that information, Domonousky called Borman, and, when Borman lied to him, he fired Borman and called the police.

The evidence presented at trial also showed that, about three days after IDC fired the Appellant in early March 2014, the owners of the property on which the Project was located notified IDC that they were terminating IDC's services and were going to do the Project themselves. According to the Appellant, the owners contacted

4

him around the same time and asked him to complete the Project, which he agreed to do. A few weeks later, after the break-in at issue here, the Appellant contacted Borman and offered him construction work on the Project.

Law enforcement officers subsequently arrested Borman and the Appellant and charged them with the computer theft and burglary.[6] At trial, the jury found the Appellant guilty on the computer theft charge. Following a hearing, the trial court denied the Appellant's motion for new trial, and this appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[7] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[8]

---

[6] See footnote 5, supra, regarding Borman's guilty plea.

[7] 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[8] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and other footnote omitted).

"The standard of *Jackson v. Virginia*[9] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[10] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant contends that the trial court erred in rejecting his claim that his attorneys were ineffective for failing to properly advise him about entering a guilty plea. Specifically, he argues that at least one of his attorneys misinformed him that he would get credit for time served in jail for another, unrelated arrest toward his sentence in the instant case. The Appellant argues that, if he had known otherwise, he would have pled guilty in this case and received a shorter sentence than he received following trial. There is no merit to this assertion.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[11] The criminal

[9] 443 U. S. at 319 (III) (B).

[10] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

[11] *Strickland v. Washington*, 466 U. S. 668, 690 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984).

6

defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [The appellate court] accept[s] the trial court's factual findings and credibility determinations unless clearly erroneous, but . . . independently appl[ies] the legal principles to the facts.[12]

"Absent clear error and harm, we will affirm the trial court's finding that [the appellant] did not receive ineffective assistance of counsel."[13]

(a) When an appellant's ineffective assistance claim is based upon an assertion that his counsel's negligence regarding a proposed plea deal caused the appellant to proceed to trial instead of plead guilty, the appellant must demonstrate both counsel's deficient performance in advising the appellant and resulting prejudice.[14]

(i) The record shows that, on May 16, 2014, the Appellant was arrested and taken to the Gwinnett County jail on the instant charges. Shortly thereafter, he retained an attorney, Michael Manfredi, and bonded out of the Gwinnett County jail.

---

[12] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

[13] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002) (footnote omitted).

[14] See *Yarn v. State*, ___ Ga. ___, ___ (4) (___ SE2d ___) (2019) (Case No. S18A1052, decided March 11, 2019) (The *Strickland* analysis extends to an ineffective assistance claim resulting from the plea-bargain process.).

7

In January 2015, while the Appellant was out on bond, he was arrested and jailed in Jackson County on unrelated felony charges. Manfredi withdrew from this case and was replaced by another attorney from the same firm, Scott Smith, who filed discovery requests in this case. Smith concurrently represented the Appellant on both the Jackson County charges and the instant charges in Gwinnett County. The Appellant remained incarcerated in the Jackson County jail until his March 2016 trial on those charges, during which he was convicted and sentenced to five years of imprisonment, to serve three. He was then transported to the Jackson State Prison. In June 2017, the Appellant fired Smith and hired new counsel, Melissa Manfredi (hereinafter, "trial counsel"). A month later, the Appellant was transported to the Gwinnett County jail so he could meet with his trial counsel prior to the trial on the instant charges, which began on August 8, 2017.

In his appellate brief, the Appellant claims that his first attorney, Michael Manfredi ("Manfredi"), was ineffective when he mistakenly told him that he would receive credit toward his sentence in the Gwinnett County case for the time he served in the Jackson County jail on the unrelated charge. This claim is not supported by a

8

citation to the trial court record,[15] however, and a thorough review of the record clearly shows that there is no evidence to support it.

The record shows that the Appellant did not call Manfredi to testify during the motion for new trial hearing, nor did the Appellant testify about Manfredi's alleged misrepresentation, even though the Appellant was present during the hearing. Thus, the Appellant has failed to present any evidence to support a finding that Manfredi's representation was deficient.[16]

Moreover, during the hearing, Smith testified that he had never discussed with the Appellant whether he would get credit toward his Gwinnett County sentence for time served in Jackson County. The Appellant's trial counsel also specifically testified that she had told the Appellant that he would *not* be entitled to credit for time

---

[15] See Court of Appeals Rule 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration.").

[16] See *Jones v. State*, 279 Ga. 854, 855 (2) (622 SE2d 1) (2005) (In order to demonstrate that counsel provided ineffective assistance, the appellant must rebut by clear and convincing evidence the strong presumption that his attorney was effective. However, the appellant did not call his attorney to testify at the hearing on the motion for new trial, and "without such testimony, it is extremely difficult to overcome this presumption.") (citations and punctuation omitted).

9

served in Jackson County because he had bonded out of the Gwinnett County jail in the instant case.

Consequently, the Appellant has failed to meet his burden of showing that any of his attorneys incorrectly advised him that he would receive credit for time served in Jackson County or otherwise misadvised him about his guilty plea options.

(ii) Even though the Appellant's failure to prove one of the *Strickland* prongs eliminates the need for this Court to address the other,[17] we note that the undisputed evidence in the record also fails to show any prejudice to the Appellant.

In order to demonstrate prejudice resulting from counsel's deficient performance in advising the appellant regarding a proposed guilty plea, the appellant must show:

> [1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the [appellant] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening

---

[17] See *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991) (An appellant's failure "to establish either the performance or the prejudice component results in denial of his [ineffective assistance] claim. A reviewing court need not address both components if the [appellant] makes an insufficient showing on one, nor must the components be addressed in any particular order.") (citation and punctuation omitted).

circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[18]

In this case, during the motion for new trial hearing, Smith testified that he spoke with the Appellant in 2015 about the possibility of entering a guilty plea, and that the Appellant responded that he was innocent and was "absolutely not interested[ ]" in entering a plea. The Appellant told Smith, "I would rather go to prison than cut grass for the rest of my life." Smith memorialized that conversation in an e-mail to his law partner. However, in 2017, still believing that a guilty plea deal could possibly be arranged and that a plea was in the Appellant's best interest, Smith had a second conversation about the possibility of a plea with the Appellant's brother, Jason Robards ("the brother").[19] The brother directed Smith to stop "discuss[ing] the possibility of resolving the case by plea negotiation."

---

[18] *Gramiak v. Beasley*, 304 Ga. 512, 515 (I) (B) (820 SE2d 50) (2018), citing *Lafler v. Cooper*, 566 U. S. 156, 163 (II) (B) (132 SCt 1376, 182 LE2d 398) (2012), (punctuation omitted).

[19] See Division (1) (b), infra, regarding the authority of the Appellant's brother to communicate with the Appellant's attorneys on his behalf.

Similarly, the Appellant's trial counsel, who started representing the Appellant about two months before trial, testified at the hearing that Appellant told her "in no uncertain terms [that] he was not going to enter a [guilty] plea." Trial counsel also testified that the Appellant never asked her to enter into plea negotiations with the prosecutor. And, as shown in the previous subsection, the Appellant failed to testify at the hearing and, thus, failed to present any testimony or evidence to contradict these witnesses or support this ineffectiveness claim.[20]

Consequently, the Appellant has failed to demonstrate both deficient performance by counsel and resulting prejudice and, thus, cannot prevail on this ineffective assistance claim as a matter of law.[21]

---

[20] See *Gramiak*, 304 Ga. at 516 (I) (C) (Arguments and representations made during hearings or in court briefs do not constitute record evidence to support a finding of fact.); see also *Yarn*, ___ Ga. at ___ (4) (Case No. S18A1052, decided 3/11/19).

[21] See *Walker v. State*, 347 Ga. App. 163, 163-166 (1) (816 SE2d 849) (2018) (The evidence showed that the defendant rejected a plea offer to serve 20 years in prison because his counsel had advised him that 20 years was the maximum sentence he could receive on a rape conviction. The State subsequently learned that the defendant faced a maximum sentence of life imprisonment – not 20 years – if convicted on the rape charge, and the defendant was notified of this just before opening statements at trial. The defendant decided to proceed with the trial, despite learning that he could receive a life sentence if convicted, because he believed that there was insufficient evidence to convict him on the rape charge. In addition, there was no evidence that, once the State learned that the maximum sentence was life

(b) The Appellant also appears to contend that his attorneys were ineffective for communicating with his brother, instead of him, regarding whether he would accept a plea deal. He argues that "there [was] no documentation authorizing his brother, Jason, to make pivotal decisions regarding the case." Pretermitting whether the Appellant properly raised this argument in his brief,[22] it lacks merit.

At the motion for new trial hearing, Smith testified that the Appellant expressly "gave [Smith] the authority to discuss confidential matters with his brother." According to Smith, the brother was a "go-between" to assist with communication between Smith and the Appellant. The brother "was very involved in [the Appellant's] defense. [The brother] participated in every chance he could get and he was very good about communication. [The brother had a] direct line of

imprisonment, it would have continued to offer a 20-year sentence in exchange for a guilty plea, nor was there any evidence that the defendant instructed his counsel to re-open plea negotiations or ask the State if the previous offer was still available. Consequently, there was no evidence to show that, but for counsel's plea advice, there was a reasonable likelihood that the outcome of the proceedings would have been different, i.e., that the plea offer was still available to the defendant, that the defendant would have accepted the offer, and that the trial court would have accepted the terms of the plea agreement.).

[22] The Appellant did not enumerate this argument as error, and "a party cannot expand [his] enumerations of error through argument or citation in [his] brief." *Manley v. State*, 287 Ga. App. 358, 360 (4) (651 SE2d 453) (2007) (punctuation and footnote omitted).

13

communication from the prison with [the Appellant] over the telephone[.]" The Appellant's counsel did not object to this testimony. And, despite being present at the hearing, the Appellant failed to testify or present any other evidence to contradict Smith's testimony and support this argument.[23]

Further, during the arguments at the end of the hearing, the State specifically stated that the Appellant's attorneys sometimes communicated to the Appellant "by and through his brother, who [was] an authorized agent for purposes of this case[.]" The Appellant did not object to this statement. Finally, in explaining its ruling on the ineffective assistance claims, the trial court stated that the Appellant's attorneys had communicated with the Appellant about a possible plea "through his brother, who the [Appellant] authorized as a method to communicate with his lawyer[s] since the [Appellant] was in prison[.]" Again, the Appellant did not attempt to interject in order to correct this statement of fact.

More importantly, the Appellant failed to raise an ineffectiveness claim on this basis in his motion for new trial in the court below. It is axiomatic that a defendant must raise all allegations of ineffective assistance of trial counsel as soon as practicable and, when appellate counsel raises the issue of ineffective assistance in

_____

[23] The brother did not testify during the new trial hearing.

14

a motion for new trial, any ineffective assistance claims not raised at that time are waived.[24]

Consequently, this issue presents no reversible error.

(c) Similarly, the Appellant's complaint that the substitutions of his counsel before trial "prohibited [him] from presenting a sound, well-investigated defense[ ]" is unavailing. First, as shown in Division 1 (a), supra, all three of his attorneys were *retained* – not appointed – counsel. Second, the Appellant has failed to show how his defense was harmed by the substitutions of counsel. Third, he did not raise this issue in his motion for new trial, nor did he raise it or present any evidence of prejudice during the motion for new trial hearing.[25] And, finally, he failed to enumerate this issue as error in his brief.[26] Thus, this issue was waived.

Accordingly, the record supports the trial court's finding of no ineffective assistance of counsel as to the Appellant's failure to enter a guilty plea. It follows that

---

[24] See *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993); *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008).

[25] See *Hayes*, 262 Ga. at 882 (2); *McGlocklin*, 292 Ga. App. at 163.

[26] See *Manley*, 287 Ga. App. at 360 (4).

the trial court was authorized to deny the Appellant's motion for new trial on that basis.

2. The Appellant contends that the trial court erred in ruling against him on his claim that his attorneys provided ineffective assistance by failing to adequately investigate the case and failing to preserve potentially exculpatory evidence for use at trial. We disagree.

(a) In his motion for new trial, the Appellant contended that, in addition to the surveillance video recordings shown to the jury at trial, there might have been additional recordings from IDC's surveillance cameras that existed at the time of the crime, but were subsequently altered or destroyed. He argued that, if his attorneys had sent IDC a letter requesting the preservation of all footage from its surveillance cameras and/or asked the State for any additional recordings during discovery,[27] the attorneys may have prevented the "spoliation of potentially exculpatory evidence." This argument is without merit for several reasons.

First, to the extent that the Appellant argues that his attorneys failed to act quickly enough to secure potentially exculpatory evidence and avoid spoliation, the

_____

[27] There is no evidence that the State failed to provide, or intentionally withheld, any surveillance video recordings during discovery, nor did the Appellant make such an assertion in the court below.

16

record shows that the Appellant did not hire his first attorney, Michael Manfredi, until the day of his arrest for the instant crimes, May 16, 2014, which was more than two months after the crime was committed. Thus, the Appellant is unable to show that even immediate action by Manfredi would have prevented the possible (and unproven) spoliation of surveillance recordings or other evidence.

Second, the Appellant did not call Manfredi as a witness during the motion for new trial hearing, so the Appellant is unable to meet his burden of showing, by the record, that Manfredi actually failed to send a spoliation letter to IDC or that he otherwise failed to do a thorough investigation in this case. Absent evidence to the contrary, it must be presumed that Manfredi's representation of the Appellant fell within the broad range of reasonable professional conduct.[28]

Further, the Appellant's second attorney, Smith, testified that he discussed the State's discovery, including IDC's surveillance videos, with the Appellant. According to Smith, the Appellant never asked him to obtain additional surveillance video recordings from IDC, and added that "there was no indication there was additional video that was available other than what we acquired through the district attorney's office through the discovery process, nor would I expect that video to be available."

[28] See *Jones*, 279 Ga. at 855 (2); *Robinson v. State*, 277 Ga. at 76.

Similarly, the Appellant's trial counsel testified that she reviewed all of the State's discovery with the Appellant, including the surveillance videos provided by IDC and the evidence obtained by Smith. She testified that the Appellant never asked her to investigate whether additional surveillance recordings existed and that she was not aware of any other footage that existed.

Third, the evidence presented at trial, including the uncontradicted testimony of IDC's owner, Domonousky,[29] showed that the surveillance recordings presented at trial were the only ones that existed for the 40-minute period surrounding the time when the computer files were downloaded and the building's alarm went off, i.e., from about 11:50 p.m. on March 13, 2014, until about 12:30 a.m. on March 14.

Thus, the Appellant's claim that a more timely and thorough investigation by his attorneys may have resulted in the discovery of exculpatory surveillance video

---

[29] According to Domonousky, in March 2014, the IDC building had four exterior surveillance cameras, but only two of the cameras recorded videos on the night at issue: the camera on the front of the building that recorded the arrival and departure of the white van and black sedan around midnight, and a camera on the back of the building that recorded a black sedan passing on a street adjacent to the IDC building around the same time.

recordings is mere speculation on his part, and such speculation is legally insufficient to support a claim of ineffective assistance.[30]

(b) In his appellate brief, the Appellant expands his initial ineffective assistance claim, addressed above, by also arguing that his attorneys negligently failed to: obtain and analyze Sechrest's computer; obtain the make and model of IDC's surveillance cameras; obtain phone records from his phone calls to his former co-workers, during which he sought their help in entering the IDC building and downloading the Project estimate from an IDC computer; investigate the "capabilities and intricacies" of the cost estimation software used by IDC; determine whether copies of the Project estimate had been provided to other people before the theft was committed; subpoena a witness to authenticate and testify about a police report; and look for alternate

---

[30] See *Dye v. State*, 266 Ga. App. 825, 827 (2) (a) (598 SE2d 95) (2004) ("[S]peculation raises no more than a mere possibility, a showing which is insufficient" to support a claim of ineffective assistance of counsel.") (citation and punctuation omitted); see also *Jones v. State*, 292 Ga. 593, 599-600 (7) (c) (740 SE2d 147) (2013) (In asserting ineffective assistance in his motion for new trial, the appellant claimed that he was unable to present certain "crucial," exculpatory evidence at his trial due to his counsel's negligence. The appellant failed to proffer such evidence during the motion for new trial hearing, however, so his contention that he was prejudiced by his counsel's alleged negligence was wholly speculative and could not sustain his ineffectiveness claim.).

19

suspects who may have committed the crimes, such as the Appellant's former co-workers.[31]

Pretermitting whether these allegations of his attorneys' negligent failure to act were raised in the trial court and preserved for appellate review,[32] the Appellant failed to proffer any evidence to show that these efforts would have yielded additional evidence that would have been admissible at trial and would have been favorable to his defense.

> In assessing the prejudicial effect of counsel's failure to [present certain evidence at trial] (whether that failure resulted from a tactical decision, negligent oversight, or otherwise), a [defendant] is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case. The failure of trial counsel

---

[31] Notably, the transcript of the new trial hearing shows that, prior to trial, the Appellant gave Smith a "laundry list of items to track down on his behalf[.]" Smith testified that he did everything that he thought was relevant to the Appellant's defense, including having an "extensive meeting" with IDC's owner, Domonousky, and Smith was able to obtain some items, but was told that "the majority of [the items requested by the Appellant] didn't exist." The Appellant's trial counsel testified that, when she was retained about seven weeks before trial, she reviewed all of the discovery provided by the State with the Appellant. She testified that Smith had also been able to obtain a "good amount" of evidence, which she reviewed with the Appellant, and she did not recall the Appellant telling her about any other evidence that she needed to obtain.

[32] See *Manley*, 287 Ga. App. at 360 (4); see also *Hayes*, 262 Ga. at 882 (2); *McGlocklin*, 292 Ga. App. at 163.

20

to employ evidence cannot be deemed to be prejudicial in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because [the Appellant] failed to make any proffer of the [evidence at issue], it is impossible for [the Appellant] to show there is a reasonable probability the results of the proceedings would have been different.[33]

Consequently, the Appellant has failed to meet his burden of showing that he was prejudiced by the alleged negligence of his attorneys.[34] It necessarily follows that the trial court properly found that the Appellant could not prevail on this ineffective assistance claim, and it did not err in denying the motion for new trial on this basis.[35]

---

[33] *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995) (citations and punctuation omitted).

[34] See *Goodwin*, 265 Ga. at 615; *Ballard v. State*, 297 Ga. 248, 254 (6) (f) (773 SE2d 254) (2015) (The appellant claimed that his counsel was ineffective because she failed to obtain allegedly exculpatory evidence due to her inadequate investigation. Because the appellant failed to proffer the evidence at issue and show that it would have been relevant and favorable to his defense, he was unable to meet his burden of showing prejudice, i.e., that, but for his attorney's failure to present such evidence at trial, there was a reasonable probability that the results of his trial would have been different.).

[35] See *Hammond v. State*, 264 Ga. 879, 880 (1) (452 SE2d 745) (1995) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.") (citation and punctuation omitted).

3. The Appellant contends that the trial court erred in instructing the jury on computer theft, computer data, and the statute of limitation, arguing that the instructions given were misleading and not properly tailored to the facts of the case. Pretermitting whether the Appellant's trial counsel preserved this issue by objecting to any of the instructions at trial,[36] we find no error.

> It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. . . . Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence.[37]

(a) The indictment charged the Appellant with computer theft, alleging that, on March 14, 2014, he "use[d] a computer with knowledge that such use was without authority and with the intention of taking property of another, to wit: [IDC.]" At trial, the court instructed the jury on the crime of computer theft under OCGA § 16-9-93

---

[36] See OCGA § 17-8-58 (a), (b) (requiring an objection to jury instructions at trial, but providing for appellate review of instructions for plain error when no objection was asserted at trial).

[37] *Crusselle v. State*, 303 Ga. App. 879, 883 (2) (b) (694 SE2d 707) (2010) (punctuation and footnotes omitted).

22

(a) (1), as follows: "Any person who uses a computer with knowledge that such use is without authority and with the intention of taking property of another, whether or not with the intention of depriving the owner of possession, shall be guilty of the crime of computer theft." The court also read the indictment to the jury, provided the jury with a copy of the indictment for reference during deliberations, and instructed the jury that the State had the burden of proving, beyond a reasonable doubt, that the Appellant had committed the offense of computer theft on or about March 14, 2014, "as alleged in Count 1 of the indictment[.]"

The Appellant contends that the computer theft jury instruction's reference to the "property of another" was too broad, because the indictment specified that the stolen property (the Project estimate) was owned by IDC. He argues that there was some evidence at trial that the Project estimate also belonged to the owners of the property where the Project was located, and, therefore, the jury may have been confused by the instruction.

As noted above, however, the court instructed the jury on the State's burden of proving each essential element of the offenses as charged in the indictment, and

the jury had a copy of the indictment for reference during its deliberations. Under these circumstances, we find no error.[38]

(b) As for the other challenged jury instructions, the court charged the jury on the statutory definition of "data,"[39] and gave the following instruction regarding the applicable statute of limitation: "The dates recited in the indictment are not material elements. With regard to the date of the offenses, the State must prove, beyond a reasonable doubt, that each offense, being computer theft and burglary in the second degree,[40] took place no more than four years before the case was indicted on February 15, 2015."

The Appellant claims that the definition of "data" included "computer printouts," and he cites to his trial testimony that he possessed a written copy of the Project estimate in December 2013, while he was still employed at IDC. He argues that, because December 2013 was within the four-year statute of limitation period for

_____

[38] See *Crusselle*, 303 Ga. App. at 883 (2) (b).

[39] See OCGA § 16-9-92 (5) ("'Data' includes any representation of information, intelligence, or data in any fixed medium, including documentation, computer printouts, magnetic storage media, punched cards, storage in a computer, or transmission by a computer network.").

[40] The jury found the Appellant not guilty on the burglary charge.

24

the computer theft charge, the jury instructions were misleading and may have caused the jurors to mistakenly convict him based on his possession of the written estimate, even though he legally possessed the estimate at that time.

This contention, however, ignores the fact that there was no evidence or argument at trial suggesting to the jury that the Appellant committed computer theft at any time other than the date given in the indictment, March 14, 2014; that the Appellant had stolen the *written* estimate; or that he was guilty of computer theft simply because he possessed a written copy of the Project estimate while he was still an employee of IDC and was working on the Project in that capacity. Considering the jury charge as a whole, including the court's instruction on the State's burden of proving the crime as charged in the indictment beyond a reasonable doubt, we find no error in the instructions at issue.[41]

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[41] See *Crusselle*, 303 Ga. App. at 883 (2) (b).