**FIFTH DIVISION
MCFADDEN, C. J.,
MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 20, 2020**

# In the Court of Appeals of Georgia

A19A2343. YOUNGBLOOD v. THE STATE.

MCMILLIAN, Presiding Judge.

In January 2018, a Glynn County grand jury indicted Antonio Youngblood on 16 counts arising from three separate incidents of domestic violence.[1] Following a jury trial, Youngblood was convicted of Counts 1, 3, 4, 9-13, and 14-16. He was also found guilty of simple assault and trespassing as lesser included charges of Counts

---

[1] The specific charges were three counts of family violence battery (Counts 1, 10-11), one count of false imprisonment (Count 2), one count of battery (Count 3), four counts of cruelty to children in the third degree (Counts 4, 14-16), one count of hindering emergency telephone call (Count 5), one count of aggravated assault (Count 6), two counts of burglary in the first degree (Counts 7-8), one count of family violence aggravated assault (Count 9), one count of battery of an unborn child (Count 12), and one count of aggravated battery (Count 13).

6 and 7.[2] The trial court sentenced Youngblood to a total of 20 years, 15 to serve. Youngblood now appeals from the denial of his motion for new trial and asserts that he received ineffective assistance of counsel during the plea bargaining process. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[3] the record shows that on November 12, 2016, Youngblood and the victim, who had two children together at the time, got into an argument. Youngblood became angry when he went through the victim's phone and saw that someone had been sending her "Snapchats" and tried to lock the victim in the bathroom. As the victim struggled to get her phone back and to get out of the bathroom, Youngblood hit her. When the victim's sister tried to intervene, Youngblood continued fighting for the phone, causing the victim to fall and hit her forehead on the bathroom sink. Youngblood also punched the victim's sister in the lip before she was able to get away and call the police.[4] Youngblood and the victims' two daughters were also present and witnessed the fight.

---

[2] The jury found Youngblood not guilty of Counts 2 and 5. The State agreed to nolle prosse Count 8 prior to the start of trial.

[3] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[4] A copy of the 911 recording was played for the jury.

When Glynn County law enforcement officers responded to the hospital where the victim was being treated for injuries to her face, the victim identified Youngblood as the person who caused her injuries. The responding officers also spoke with the victim's sister, whose lip was still visibly bleeding, who also accused Youngblood of causing the injuries. Police were unsuccessful in their attempts to locate Youngblood at that time.

On January 2, 2017, Youngblood came to the victim's house and knocked on her door. The victim did not let him in and called Youngblood's mother for help. When Youngblood's mother arrived, the victim opened the door to let her in, and Youngblood came in behind her. His mother told him to leave, but Youngblood said he just wanted to talk. The victim went into the kitchen to get away from him, but as Youngblood "was trying to get at [her]," she fell. Youngblood then kicked her in the head. The victim fled to a local store and called 911. When the Glynn County police responded to a call at a Family Dollar store, they found the victim fearful and crying. She reported that Youngblood had assaulted her. Law enforcement efforts to locate Youngblood were again unsuccessful.

On or about September 19, 2017, the victim was at the home of Youngblood's sister. While they were putting a movie on for their children, Youngblood came to the

3

apartment. He and the victim stood outside the front door talking until the victim suddenly ran inside and slid behind Youngblood's sister on the couch. Youngblood ran in after her, saying he wanted to talk to her. His sister told him he had to leave, but Youngblood said, "I'm not fixing to hit her. I just want to talk to her." When Youngblood's sister walked to the other side of the table to get her phone, Youngblood started hitting the victim, punching her in the face, and then stood on top of her and stepped on her. His sister ran around and tried to jump on him and grab him, but he kept kicking the victim in her stomach and her face. The victim was approximately seven months pregnant with Youngblood's child at the time. There were two children present in the apartment while Youngblood was attacking the victim.

Youngblood did not stop until his sister yelled that she was calling the police, and he finally ran out of the apartment. The victim called 911, but when she started having trouble breathing, Youngblood's sister rushed her to the hospital. Glynn County law enforcement officers met the victim at the hospital to investigate. They took photographs of her injuries, including bruising and swelling on her forehead, excessive swelling on her hands, and bruising on her left side, her right arm, and under her right breast. The victim identified Youngblood as the person who had

injured her. A recording of the victim's 911 call was played for the jury. After Youngblood was convicted, this appeal followed.

In his sole enumeration of error on appeal, Youngblood asserts that he received ineffective assistance of counsel during the plea bargaining process because his counsel failed to inform him that even if the witnesses recanted in their live testimony, the witnesses' pre-trial statements could be used against him and would carry the same weight as their trial testimony. Youngblood contends that if he had been properly informed, he would not have chosen to proceed to trial. We are unpersuaded.

When an appellant's ineffective assistance claim is based upon an assertion that his counsel's negligence regarding a proposed plea deal caused him to plead guilty, he must demonstrate both counsel's deficient performance in advising him and resulting prejudice under the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 690 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984). See *Yarn v. State*, 305 Ga. 421, 426 (4) (826 SE2d 1) (2019) (*Strickland* analysis applies to ineffective assistance claims arising from plea-bargain process). If the appellant fails to meet his burden of proving either prong of the *Strickland* test, we need not examine the other prong. See *Jacobs v. State*, 306 Ga. 571, 573 (2) (832 SE2d 363) (2109). "Absent clear error and

5

harm, we will affirm the trial court's finding that the appellant did not receive ineffective assistance of counsel." (Citation and punctuation omitted.) *Robards v. State*, 350 Ga. App. 46, 49 (1) (828 SE2d 9) (2019).

At the motion for new trial hearing, Youngblood testified that he was aware that the State's witnesses, including the victim, the victim's sister, and his own sister had previously made statements against him to law enforcement officials. According to Youngblood, if his counsel had told him that the witnesses' prior statements would have the same "weight" as their trial testimony, he would not have gone to trial. However, Youngblood conceded that he was present at the preliminary hearing and his probation revocation hearing where the witnesses recanted, but the State was able impeach those witnesses with their prior statements to law enforcement. Based on that evidence, Youngblood's probation was revoked.

Youngblood's trial counsel also testified that he met with Youngblood at least six times prior to trial and went over the evidence that he believed the State would produce, including the victim's and other witnesses' pre-trial statements. They also discussed the various inconsistent statements that had been given and whether any of

6

the witnesses might recant at trial.[5] Counsel recalled that the State had initially offered Youngblood 15 years to serve, with some additional term of probation. With Youngblood's consent, he eventually negotiated an offer of fifteen years, with four to serve. However, when he returned with the offer, Youngblood changed his mind, stating that his mother did not want him to take the deal.

Counsel testified that he informed Youngblood regarding the total minimum and maximum prison time he faced on the charges if he went to trial. He also explained to him that they did not necessarily know what the witnesses were going to say at trial and that they certainly did not know what a jury was going to do. Counsel denied telling Youngblood that the State would not be able to confront the witnesses with their prior statements. He further testified that he informed Youngblood about "all the risks inherent in going to a jury trial." However, he stated that he would never "twist [a client's] arm and tell them they have to take a plea offer."

"A defendant is entitled to be fully informed of certain consequences of his decision to accept or reject a plea offer, including the right to the informed legal

---

[5] At the preliminary hearing and Youngblood's probation revocation hearing, the victim maintained that she sustained her injuries after falling down the stairs.

7

advice of counsel regarding the possible sentences that could be imposed following a conviction at trial." *Gramiak v. Beasley*, 304 Ga. 512, 514 (I) (A) (820 SE2d 50) (2018). And "[w]hen considering claims of ineffectiveness of counsel, the trial judge determines witness credibility and is not required to accept the defendant's version of events." (Citation and punctuation omitted.) *Anderson v. State*, 352 Ga. App. 275, 279 (2) (834 SE2d 369) (2019). The trial court here was authorized to find that Youngblood's trial counsel provided him with informed legal advice regarding the consequences of his decision to accept or reject the State's plea offer and that Youngblood was aware, based on the pretrial hearing and probation revocation hearing, that the witnesses' prior statements could be used against him even if they testified in his favor at trial.[6] Accordingly, the trial court did not err in denying Youngblood's motion for new trial.

*Judgment affirmed. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.

---

[6] We further note that it is for the jury, not counsel, to determine the weight of evidence produced at trial. See *Shaw v. State*, __ Ga. __, __ (1) (b) (835 SE2d 279) (2019) ("Questions as to weight and credibility are for the jury to decide.").